IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY L. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 10-240-GMS |
| | ) |
| WPD (Wilmington Police Department), | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff Timothy L. Davis ("Davis"), filed this lawsuit alleging violations of his civil rights pursuant to 42 U.S.C. §§ 1983, 1985(2), 1985(3), 1986 and 18 U.S.C. § 247, and other theories of recovery. (D.I. 2.) He appears *pro se* and has been given leave to proceed without prepayment of fees pursuant to 28 U.S.C. § 1915. (D.I. 6.) Davis also requests counsel. (D.I. 5.) The court now proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915.

**I. BACKGROUND**

Named as the defendants are the WPD (i.e., Wilmington Police Department), Patrolman Michael Rinehart ("Rinehart"), WPD Supervisor at "Turnkey" 3/25/09 ("supervisor"), Badge #7 Internal Affairs ("Badge #7"; Badge # 25 Desk Sargent ("Badge #25"), Chief Szczerba ("Szczerba"), John Doe ("Doe'), Three Officers with Rinehart during search warrant 3/26/09 ("three officers"), Woman with Rinehart mentioned in this complaint ("woman"), Wilmington Police Officers F.O.P. ("F.O.P."), J. P. Court Stanley Petraschuk ("Petraschuk"), and J.P. Court

("J.P. Court"). Davis alleges that he was falsely arrested the evening of March 25, 2009, by Rinehart, a WPD patrolmen.[1]

The complaint provides great detail of Davis' actions prior to the arrest. At the time of the arrest, Rinehart, who was in his police vehicle, approached Davis and informed him there had been a series of burglaries in the area and that Davis looked like a suspect. Rinehart searched Davis, without receiving his consent, and recovered a bottle of wine, a .32 caliber pistol, and a flashlight. Davis was handcuffed and placed in the police car without *Miranda* warnings.[2] Davis alleges that Rinehart and "possibly a women he was with," conspired to violate his right to due process and equal protection. As proof, Davis points to "planted evidence" and a ten minute delay before he was stopped by Rinehart.

Davis was taken to the WPD headquarters jail and fingerprinted, photographed, and again searched without *Miranda* warnings. A short time later Rinehart read Davis his *Miranda* rights. At the police station, Davis was advised by a police sergeant that his room at the YMCA would be searched. He also alleges that Rinehart hurled racial taunts at him.

Several hours later Davis appeared before a judge via video and was informed he was charged with burglary and other charges. He was transferred to the Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware, and strip searched several times. A few days later the public defender visited Davis and informed him that he was charged with

---

[1]The complaint refers to the relevant year as both 2009 and 2010. In reading the entire complaint it is evident that the correct year is 2009.

[2]During this time, two policewomen whom Davis had walked by earlier in the evening arrived on the scene. He alleges that although they saw him earlier, he did not look suspicious to them, otherwise they would have arrested him. He similarly alleges that when Rinehart saw him earlier in the evening he did not stop him. (D.I. 2.)

burglary, loitering, and "a host of other things." Davis alleges that Rinehart faked probable

cause for the arrest and falsely charged him with several charges including "school zone" and

loitering. He alleges that Rinehart and the WPD Sergeant's behavior on March 25, 2009, caused

him to remain detained. Davis further alleges that the behavior of Rinehart, the woman with

him, WPD 129, Badge #7, Doe, F.O.P., and possibly the video court judge resulted in four strip

searches. Finally, Davis alleges that Rinehart and Badge #25 maliciously harassed him.[3]

Davis was held for eleven days without an indictment before appearing in the Court of

Common Pleas. During the hearing, Rinehart testified that there had been no burglaries in the

area for up to a year; he described Davis' multi-tool (worn on his belt) and flashlight as burglary

tools; and that Davis looked suspicious because his hat was pulled down over his head and a

hood covered his face. Following Rinehart's testimony, Badge #7 approached the commissioner

and, according to Davis, gave statements that "proved he knew Rinehart broke the law." (D.I. 2.)

Davis alleges that the WPD took no action after Rinehart "was caught." On the day he was

released from the HYRCI, Davis alleges that Badge #25 told him he could not file a complaint

because the WPD does not have an internal affairs department.[4]

The day after his arrest, Rinehart and three officers searched Davis' room at the YMCA.

The manager, Dara Wright ("Wright") was not allowed to make a photocopy of search warrant.

---

[3]Davis alleges that he filed a complaint against Rinehart on several occasions, but according to the WPD, it has no record of them. An exhibit indicates that his correspondence to the Delaware State Police containing complaints of Rinehart was forwarded by it to the WPD. (D.I. 2, ex.)

[4]While not clear, it appears that Davis was charged in this court as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), but the charge was dismissed after it was discovered that Davis was not a convicted felon. (*Id.*)

Rinehart used Davis' key to enter the room.  Davis arrived at his YMCA room following his

release from the HRYCI to find it ransacked with damaged goods and missing items.  A copy of

the search warrant had been left on a desk in the room.  Davis alleges that the search was illegal.

Davis seeks compensatory and punitive damages, attorney fees, and costs.

## II.  STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, *in forma pauperis* actions that are

frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is

immune from such relief.  *See* 28 U.S.C. § 1915(e)(2).  The court must accept all factual

allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff.

*Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S.

89, 93 (2007).  Because Davis proceeds *pro se*, his pleading is liberally construed and his

complaint, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact."  *Neitzke v.

Williams*, 490 U.S. 319, 325 (1989).  Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a

complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly

baseless" or "fantastic or delusional" factual scenario.  *Neitzke*, 490 at 327-28; *Wilson v.

Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080,

1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's

pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to §

1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on 12(b)(6) motions.

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6)

standard to dismissal for failure to state a claim under § 1915(e)(2)(B)).  However, before

dismissing a complaint or claims for failure to state a claim upon which relief may be granted

pursuant to the screening provisions of 28 U.S.C. §§ 1915, the court must grant Davis leave to

amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview

State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See

Ashcroft v. Iqbal*, –U.S.–, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007).  The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals

of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949.

When determining whether dismissal is appropriate, the court conducts a two-part analysis.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the factual and legal

elements of a claim are separated. *Id.*  The court must accept all of the complaint's well-pleaded

facts as true, but may disregard any legal conclusions. *Id.* at 210-11.  Second, the court must

determine whether the facts alleged in the complaint are sufficient to show that Davis has a

"plausible claim for relief."[5] *Id.* at 211.  In other words, the complaint must do more than allege

Davis's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of

---

[5]A claim is facially plausible when its factual content allows the court to draw a
reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at
1949 (quoting *Twombly*, 550 U.S. at 570).  The plausibility standard "asks for more than a sheer
possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are
'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and
plausibility of 'entitlement to relief.'" *Id.*

misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949  (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. Municipality Liability

The WPD is a named defendant.  "[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Caldwell v. Egg Harbor Police Dep't*, No. 09-2722, 2010 WL 318282, at *1 (3d Cir. Jan. 28, 2010) (quoting *Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)).  *Cf. Bosenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) (for purposes of § 1983 claims, municipalities and police departments are treated as single entity).  A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).  While a government policy is established by a "decisionmaker possessing final authority," a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citations omitted).  Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

The complaint does not alleges that any particular decision, policy, or custom caused an alleged deprivation of Davis' rights.  Absent any allegation that a custom or policy established by

-6-

the WPD directly caused harm to Davis, his § 1983 claim cannot stand.  Accordingly, the court

will dismiss the claim against the WPD as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

**B. Pleading Deficiency**

In reading the complaint, it is evident that Davis seeks to hold liable any, and all persons,

involved in any way, with the events of March 25, 2009, and subsequent proceedings.  With the

exception of the claims against Rinehart, however, the complaint does not contain cognizable

claims for relief.  Rather, it consists of labels and conclusions without supporting facts.

Moreover, many of the statements merely described what happened, rather than allege a

cognizable claim.  With the exception of the allegations against Rinehart, the remaining

allegations do not meet the pleading requirements of *Iqbal* and fall far short of setting forth an

entitlement to a claim for relief.

Finally, to the extent that Davis seeks to impose criminal liability upon the defendants

pursuant to the criminal statutes upon which he relies, he lacks standing to proceed.  *See Allen v.*

*Administrative Office of Pennsylvania Courts*, 270 F. App'x 149, 150 (3d Cir. 2008) (not

published); *see United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996) ("[T]he United

States Attorney is responsible for the prosecution of all criminal cases within his or her

district.").  The decision of whether to prosecute, and what criminal charges to bring, generally

rests with the prosecutor.  *See United States v. Batchelder*, 442 U.S. 114, 124 (1979).  Therefore,

the criminal claims will be dismissed as frivolous pursuant to pursuant to 28 U.S.C. §

1915(e)(2)(B).[6]

---

[6]The court also notes that the J.P. Court is immune from suit.  *See Brooks-McCollum v.*
*Delaware*, 213 F. App'x  92, 94 (3d Cir. 2007) (not published) (Delaware State Courts have
Eleventh Amendment sovereign immunity from § 1983 claims).  Additionally, it appears that

## C. Request for Counsel

Davis requests counsel on the grounds that he is unemployed and has made unsuccessful

attempts to retain counsel. (D.I. 5.) Although a plaintiff does not have a constitutional or

statutory right to an attorney,[7] a district court may seek legal representation by counsel for a

plaintiff who demonstrates "special circumstances indicating the likelihood of substantial

prejudice to [the plaintiff] resulting . . . from [the plaintiff's] probable inability without such

assistance to present the facts and legal issues to the court in a complex but arguably meritorious

case." *Tabron v. Grace*, 6 F.3d 147, 154 (3d Cir. 1993)(citing *Smith-Bey v. Petsock*, 741 F.2d

22, 26 (3d Cir. 1984)).

Factors to be considered by a court in deciding whether to request a lawyer to represent an

indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to

present his or her case considering his or her education, literacy, experience, and the restraints

placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to

which factual investigation is required and the plaintiff's ability to pursue such investigation; (5)

the plaintiff's capacity to retain counsel on his or her own behalf; and (5) the degree to which the

---

Petraschuk, a Justice of the Peace in and for New Castle County, Delaware is entitled to judicial
immunity. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir.
2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)) ("A judicial officer in the
performance of his duties has absolute immunity from suit and will not be liable for his judicial
acts." )

[7]*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§
1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to
represent an indigent civil litigant, the operative word in the statute being "request."; *Tabron v.
Grace*, 6 F.3d 147, 153 (3d Cir. 1993) (no right to counsel in a civil suit).

case turns on credibility determinations or expert testimony. *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.

After reviewing Davis' motion, the court concludes that the case is not so factually or legally complex that appointing an attorney to represent Davis is warranted at this time. Davis' filings in this case demonstrate his ability to articulate his claims and represent himself. Finally, this case is in its early stages and no defendants have been served. Thus, in these circumstances, the court will deny Davis' motion without prejudice to renew the request for counsel. (D.I. 5.)

## IV. CONCLUSION

For the above stated reasons, Davis will be allowed to proceed against Rinehart. All remaining defendants and claims, including the criminal claims, will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). Davis' request for counsel is denied without prejudice to renew. (D.I. 5.)

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

_____June 3_____, 2010
Wilmington, Delaware

-9-

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TIMOTHY L. DAVIS,                          )
                                           )
                Plaintiff,                 )
                                           )
        v.                                 ) Civ. Action No. 10-240-GMS
                                           )
WPD (Wilmington Police Department),        )
et al.,                                    )
                                           )
                Defendants.                )

## ORDER

At Wilmington this __3rd__ day of ___June___, 2010 for the reasons set forth in the

Memorandum issued this date,

IT IS ORDERED that:

1. The defendants WPD, WPD Supervisor at "Turnkey" 3/25/09, Badge #7 Internal

Affairs; Badge # 25 Desk Sargent, Chief Szczerba, John Doe, Three Officers with Rinehart

during search warrant 3/26/09, Woman with Rinehart mentioned in this complaint, Wilmington

Police Officers F.O.P., J. P. Court Stanley Petraschuk, and J.P. Court, all claims against them,

and all criminal claims against all the defendants are **dismissed** as frivolous pursuant to 28

U.S.C. § 1915(e)(2)(B).

2. The plaintiff is allowed to proceed with remaining claims against the defendant

Michael Rinehart.

3. The plaintiff's request for counsel is **denied** without prejudice to renew.  (D.I. 5.)

IT IS FURTHER ORDERED that:

1. Pursuant to Fed. R. Civ. P. 4(c)(3), (d)(1), and (j)(2) the plaintiff shall complete and provide to the Clerk of Court an original "U.S. Marshal-285" forms for **the remaining defendant Michael Rinehart, as well as the chief executive officer of the City of Wilmington, Delaware.  Additionally, the plaintiff shall provide the court with copies of the complaint (D.I. 2) and multi media document (D.I. 3) for service upon Michael Rinehart and the chief executive officer of the City of Wilmington, Delaware.  Furthermore, the plaintiff is notified that the United States Marshal Service ("USMS") will not serve the complaint until all "U.S. Marshal 285" forms have been received by the Clerk of Court.** Failure to provide the USM-285 form and copies of the complaint within 120 days from the date of this order may result in the complaint being dismissed or defendant being dismissed pursuant to Federal Rule of Civil Procedure 4(m).

2. Upon receipt of the form(s) required by paragraph 1 above, the USMS shall forthwith serve a copy of the complaint (D.I. 2), the sealed exhibit (D.I. 3), this order, a "Notice of Lawsuit" form, and a "Return of Waiver" form upon the defendant(s) so identified in each 285 form.  All costs of service shall be advanced by the United States.

3. For each defendant who does not return an executed "Waiver of Service of Summons" form within thirty (30) days from the date that the "Notice of Lawsuit" and "Return of Waiver" forms were sent, the plaintiff must complete a summons and submit the completed summons to the Clerk of Court for issuance.  The plaintiff shall also provide to the Clerk of Court completed, original "U.S. Marshal-285" form(s) as set forth in paragraph 1 and copies of the complaint for service.  Upon issuance of the summons by the Clerk of Court, the USMS shall personally serve said defendant(s) and said defendant(s) shall be required to bear the costs related to such service,

-2-

unless good cause is shown for failure to sign and return the waiver pursuant to Fed. R. Civ. P. 4(d)(1) and (2) .

4. Pursuant to Fed. R. Civ. P. 4(d)(3), a defendant who, before being served with process timely returns a waiver as requested, is required to answer or otherwise respond to the complaint within **sixty (60) days** from the date upon which the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form are sent. If a defendant responds by way of a motion, said motion shall be accompanied by a brief or a memorandum of points and authorities and any supporting affidavits.

5. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

-3-