IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Timothy L. Davis, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Patrolman Michael Rinehart, )<br>)<br>Defendant. )<br>) | Civil Action No. 10-240-GMS |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff, Timothy L. Davis ("Davis"), filed a Complaint (D.I. 2) against the defendant, Patrolman Michael Rinehart ("Rinehart"), and other members of the Wilmington Police Department ("WPD"). Rinehart is the only remaining defendant as all other defendants and claims against them have since been dismissed from the proceedings by order of the court, dated June 3, 2010. (D.I. 7.) In his Complaint, Davis alleges violations of his civil rights pursuant to 42 U.S.C. §§ 1983, 1985(2), 1985(3), 1986, and 18 U.S.C. § 247, in addition other theories of recovery. Davis appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 1.) Davis seeks compensatory and punitive damages. (D.I. 2, ¶ 167.) Presently before the court are the parties' cross motions for summary judgment, filed on March 1, 2013, following the completion of discovery. (D.I. 36; D.I. 39.) For the reasons stated below, the court will grant Rinehart's motion for summary judgment and will deny Davis' motion.

## II. BACKGROUND

On March 26, 2009, at approximately 1:00 a.m., Rinehart, a police officer, observed Davis exit between two buildings in the 1300 block of Broom Street in Wilmington, Delaware. (D.I. 38 at A-1.) Rinehart noticed Davis was wearing a back pack and a hood pulled over his head and facial area. (*Id.*) Based on an increase in thefts of personal property from vehicles in the area, Rinehart decided to stop Davis and to request his identification. (*Id.* at A-2.) Davis pulled up next to Davis and asked, "Can I speak to you for a second?" (*Id.*) Davis removed the ear phones he was wearing and responded, "yeah sure." (*Id.*) Rinehart advised Davis of the thefts from vehicles that had recently occurred in the surrounding area and inquired as to whether Davis lived in the immediate area.[1] (*Id.*) Davis stated that he lived at the YMCA and that he was out for a walk. (*Id.*) Rinehart asked Davis if he had any identification, and Davis produced his Delaware driver's license.[2] (*Id.*)

Rinehart asked Davis if he could check him for any "firearms, bombs, grenades or knives." (*Id.*) Davis responded, "Yeah, I actually do have a gun right here," as he pointed to his left side. (*Id.*) Rinehart then requested that Davis place his hands on the hood of the police vehicle as he removed a handgun from the left side of Davis' waist band.[3] (*Id.* at A-3.) Rinehart decided to detain Davis for further investigation and conducted a check of Davis' person, which revealed possession of a small flashlight, black wool gloves and a Gerber multi-tool.[4] (*Id.*) Rinehart believed that those items were commonly used in the commission of burglaries and

---

[1] Davis alleged in his complaint that Rinehart, who was in his police vehicle, approached Davis and informed him there had been a series of burglaries in the area and that Davis looked like a suspect. (D.I. 2, ¶ 34.)

[2] Rinehart checked the Delaware Criminal Justice Information System ("DELJIS") for information on Davis, which showed no criminal history aside from a traffic violation. (D.I. 38 at A-2, A-13.) Rinehart also asked Davis for his Social Security Number, but Davis refused to provide the information. (*Id.* at A-2.)

[3] Davis claimed he had a permit to carry a concealed weapon; Rinehart was unable to find any record of such a permit through DELJIS. (*Id.* at A-3.)

[4] Davis alleged in his complaint that Rinehart searched him without consent and recovered a bottle of wine, a coffee cup, a .32 caliber pistol, and a flashlight. (D.I. 2 at ¶¶ 38–45.)

vehicle thefts. (*Id.*) Rinehart transported Davis to the central police station of the Wilmington Police Department. (*Id.*)

Rinehart applied for a search warrant for Davis' residence to look for evidence of Davis' commission of the crime of carrying a concealed deadly weapon and to attempt to locate a valid permit for carrying a concealed weapon. (*Id.* at A-5.) Justice of the Peace Court 20 issued the requested search warrant on March 26, 2009, at approximately 6:45 p.m. (*Id.*) The evening of March 26, 2009, Rinehart, along with two other WPD officers, executed the search warrant at the Central YMCA in Wilmington, Delaware. (*Id.*) The Officers did not find any permit to carry a concealed weapon or any of the other items listed in the search warrant. (*Id.*) Rinehart asserts that Davis' apartment was in a very messy condition before the search was performed and that the search did not cause damage or destruction.[5] (*Id.*)

The State of Delaware subsequently prosecuted Davis for the crimes of carrying a concealed deadly weapon, possession of a firearm during the commission of a felony, possession of burglar's tools, possession of a weapon in a safe school and recreation zone, and loitering. (*Id.* at A-6.) A preliminary hearing took place on April 7, 2009, in the Delaware Court of Common Pleas. (*Id.*) Davis was represented by counsel, and Rinehart testified under oath on behalf of the State at the preliminary hearing and was cross-examined by Davis' counsel. (*Id.*) On April 9, 2009, Davis pled guilty to carrying a concealed deadly weapon in exchange for a *nolle prosequi* on the remaining charges. (*Id.* at A-66, A-69–71.) Davis was sentenced to one year in jail. (*Id.* at A-71.)

In his Motion for Summary Judgment, Davis asserts a host of claims against Rinehart including defamation, fraud, negligence, racial discrimination, malicious prosecution, and false

---

[5] Davis alleges that Rinehart and the accompanying Officers created a "disaster" and caused excessive damage to his space. (D.I. 2 at ¶ 85–90.)

3

arrest. (D.I. 39 at 2.) Davis alleges that statements made by Rinehart, during his testimony at Davis' preliminary hearing, were knowingly false. (*Id.* at 5, 22.) Davis also asserts that he was in legal possession of the firearm he was carrying. (*Id.* at 21–22.) Davis similarly takes issue with the search warrant procured by Rinehart to search his residence, asserting that "a search warrant is defamatory by nature" and that "the purpose of a search warrant is to search for something illegal not the legal items listed in the warrant application or the actual warrant." (*Id.* at 4, 9.) Davis asserts that the "search warrant was issued for the sole purpose of defendant's desire to do wrong empowered by color of law." (*Id.* at 4.)

## III. STANDARD OF REVIEW

Because Davis proceeds *pro se,* his pleadings are liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material fact exists, the district court must view the evidence in a light

4

most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing FED. R. CIV. P. 56(e)).

Importantly, the mere existence of some evidence in support of the nonmoving party will not prove sufficient for denial of a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* Specifically, the party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Thus, a nonmoving party asserting that a material fact is in dispute must support this assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute. . . ." *See* Fed. R. Civ. P. 56(c)(1). If the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 32.

## IV. DISCUSSION

Rinehart asserts the following in support of his Motion for Summary Judgment: (1) Davis lacks standing under 42 U.S.C. § 3789; (2) Davis' §§ 1983, 1985, and 1986 claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (3) Davis cannot prove a constitutional violation, and Rinehart is entitled to qualified immunity; (4) Davis' §§ 1985(2), (3), and 1986 claims fail because there is no evidence of a conspiracy or discriminatory animus; (5) Davis' Title VI claims fail because Rinehart is an individual, not a "program or activity;" and (6) Rinehart is immune from Davis' state law claims under the Municipal Tort Claims Act. (D.I. 37 at 1.)

The court will address each assertion in turn, as necessary.[6]

### 1. Section 1983 Claims

Section 1983 offers private citizens a means to redress violations of federal law by state officials. *See* 42 U.S.C. § 1983. Section 1983, however, is not an independent source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Davis has alleged that his Fourth and Fourteenth Amendment rights were violated based on his false arrest, false imprisonment, and malicious prosecution.

---

[6] The court rejects several of Davis' claims at the outset. Davis lacks standing to assert alleged violations of federal crimes under Title 18 of the United States Code. Davis also alleges a violation of 42 U.S.C. § 3789, an administrative provision defining when an agency or organization takes title to personal property purchased with federal funds. 42 U.S.C. § 3789. There is no basis for this claim, nor does § 3789 create a private cause of action. Finally, the court finds no merit to Davis' Title VI claims, which prohibits discrimination by programs or activities receiving federal funding. 42 U.S.C. § 2000d *et seq.* Rinehart is an individual, not a "program or activity." All of these claims must be discharged, and no further discussion is necessary.

Proceeding under these principles, the court will address Davis' claims to determine first, whether a constitutional violation has occurred, and second, whether Rinehart is entitled to qualified immunity.

a. False Arrest/Imprisonment

A claim under § 1983 for false arrest or false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). To establish a claim for false arrest, a plaintiff is required to show that the arresting officer lacked probable cause to make the arrest. *See id.*; *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988); *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001). The crucial inquiry in a § 1983 false imprisonment claim is not whether the person arrested actually committed the offense, but whether probable cause existed to believe that the person arrested committed the offense. *See Dowling*, 855 F.2d at 141; *see also Baker v. McCollan*, 443 U.S. 137 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.").

Courts may find that a guilty plea, standing alone, establishes sufficient evidence of probable cause to justify an arrest. *See, e.g., White v. Brown*, No. 08-606-ER, 2010 WL 1740717, at *5 n.4 (D. Del. Apr. 28, 2010) (citing *Imbergamo v. Castaldi*, 392 F. Supp. 2d 686, 696 (M.D. Pa. 2005); *Padro v. Heffelfinger*, 110 F.R.D. 333, 334–35 (E.D. Pa. 1986)). Notwithstanding his guilty plea for carrying a concealed deadly weapon, Davis also fails to provide any evidence calling into question the probable cause determination. Rinehart obtained a warrant to search for additional evidence of a Davis' crime—carrying a concealed deadly weapon. (D.I. 39 at 6–7.) Despite stating that he has the right to carry a concealed weapon,

Davis has produced no evidence to support this fact or challenge Rinehart's sworn statements that he searched for and failed to find evidence of a carrying permit. Davis' conclusory assertion that Rinehart's statements were false, without specific support, is insufficient to establish a genuine issue of material fact. *See Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) ("[*Pro se* plaintiff] still ha[s] ... the formidable task of avoiding summary judgment by producing evidence such that a reasonable jury could return a verdict for [him] . . . ." (internal quotations omitted)); *Harp v. Rahme*, 984 F. Supp. 2d. 398, 409 (E.D. Pa. 2013) ("[T]he Court will not recognize disputes of material fact based solely on conclusory statements that are not substantiated by specific allegations of fact or evidence on the record. Plaintiff's pro se status does not eliminate her obligation to allege specific facts, substantiated by evidence on the record.").

Thus, Davis has failed to demonstrate that his arrest was not supported by probable cause, thus defeating his § 1983 tort claims for false arrest and false imprisonment and malicious prosecution.

b. Malicious Prosecution

Similarly, claims for malicious prosecution under § 1983 require a showing that the arrest was not supported by probable cause. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (requiring for a malicious prosecution claim that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding).

As already noted, Davis has failed to challenge the probable cause determination that resulted in his arrest. Thus, his malicious prosecution claim fails.

### 2. Additional Federal Claims

Davis also asserts claims under 42 U.S.C. §§1985(2) and (3) alleging conspiracy. (D.I. 2 at 3.) Davis asserts that "proof of the conspiracy is the fact that [Rinehart] planted evidence in an alley." (*Id.* ¶ 142.) Davis also alleges that "[Rinehart] lied saying he saw me digging in a trash can." (*Id.* ¶ 143.) Davis also appears to assert a claim under 42 U.S.C. § 1986 alleging neglect to prevent.[7] Davis alleges that "Rinehart maliciously harassed me while I acted in accordance with multiple constitutional and statutory rights." (*Id.* ¶ 148.) The factual record does not support these claims. Thus, the court must grant summary judgment. *See Bello v. Romeo*, 424 F. App'x 130, 133 (3d Cir. 2011) ("While . . . allegation[s] may [be] sufficient to survive [the] motion to dismiss, [they] alone [are] not sufficient to defeat a motion for summary judgment. . . . While we have held that '[t]he allegations of a pro se litigant are generally held to a 'less stringent standard' than formal pleadings prepared by a lawyer,' pro se litigants are nonetheless required to comply with the procedures outlined in Rule 56 of the Federal Rules of Civil Procedure." (quoting *United States v. Albinson*, 356 F.3d 278, 284 n.9 (3d Cir. 2004))); *Harp*, 984 F. Supp. 2d. at 409.

### 3. Qualified Immunity

Rinehart also asserts that he is immune from suit based on the doctrine of qualified immunity. (D.I. 37 at 16–17.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a

---

[7] Count 5 of the Complaint is marked "Violation of U.S.C. 1983 Refusing or Neglecting to Prevent," although the relevant statute is § 1986 (D.I. 2 at 22.)

9

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As a result, "[The Supreme Court has] repeatedly [] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

In *Saucier v. Katz*, the Supreme Court established the following two-step inquiry for analyzing claims of qualified immunity: (1) whether the facts that the plaintiff has shown make out a violation of a constitutional right; and (2) if such a violation is shown, the court must decide whether the right at issue was "clearly established" at the time the defendant acted. 533 U.S. 194, 201 (2001); *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

Davis fails to point to facts in the record to demonstrate that he suffered a violation of his constitutional rights. As already noted, Davis has not undermined the validity of Rinehart's probable cause for the initial search, the arrest, or the search warrant. Indeed, Davis pled guilty to the offense, seriously weakening his contention that his arrest and the underlying conduct were unconstitutional. *White v. Brown*, 2010 WL 1740717 at *5 n.4. The facts in the record, even when viewed in a light most favorable to Davis, do not illustrate a violation or that a "reasonable official would understand that what he [was] doing violates [a] right." *See Adams v. Selhorst*, 779 F. Supp. 2d 378, 388 (D. Del. 2011). As such, summary judgment will be granted in favor of Rinehart with respect to each of Davis' claims.

### 4. State Law Claims

Rinehart's qualified immunity eliminates all of Davis' federal claims. These federal claims were the basis for exercising supplemental jurisdiction over Davis' additional state law claims. *See* 28 U.S.C. § 1367(a). Because there is no longer an active federal question pertaining to the Rinehart, the court declines to exercise supplemental jurisdiction. *See* § 1367(c)(3); *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 913 (3d Cir. 1984) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))). The court dismisses Davis' remaining state law claims for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Even if the court were to exercise jurisdiction, however, the claims would fail because they are barred by the Delaware County and Municipal Tort Claims Act ("the Act"). Under the Act, "all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages." 10 Del. C. § 4011(a). The carve out for government employees states:

> An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or wilful and malicious intent.

§ 4011(c).

The record is devoid of evidence indicating that Rinehart is not immune under the Act. The only mention of property damage comes in the complaint, explaining that Rinehart damaged Davis' belongings in executing the search warrant. (D.I. 2, ¶¶ 85–90.) However, none of Davis' thirty-four counts alleged in the complaint go to trespass or other property damage torts. (*Id.* at

11

3–4.) Economic damages—such as inability to work—do not constitute property damage for the purposes of the Act. *See Carr v. Town of Dewey Beach*, 730 F. Supp. 591, 602 (D. Del. 1990); *Dale v. Town of Elsmere*, 702 A.2d 1220, 1222–23 (Del. 1997). Moreover, "emotional distress and related injuries do not constitute 'bodily injury' as defined by the Tort Claims Act under Delaware law." *Dickerson v. Phillips*, No. N10C-08-221-PLA, 2012 WL 2236709, *2 (Del. Super. Ct. June 13, 2012). Davis also fails to put forth evidence that Rinehart was acting outside the scope of employment, or that he was acting "with wanton negligence or wilful and malicious intent." § 4011(c). The Delaware County and Municipal Tort Claims Act bars Davis' state law claims.

## V. CONCLUSION

In view of the foregoing, Rinehart's motion for summary judgment is granted, and Davis' motion for summary judgment is denied. Any additional, unaddressed claims made by Davis are summarily dismissed as lacking legal and factual merit.

Dated: September 22, 2014

UNITED STATES DISTRICT COURT